**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

RAFAEL RIVERA-ALONZO, a.k.a.
Rafael Alonzo-Rivera,
          *Defendant-Appellant.*

No. 08-10081

D.C. No.
CR-06-00748-SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
February 9, 2009—San Francisco, California

Filed October 26, 2009

Before: John T. Noonan, Marsha S. Berzon, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

14349

---

**COUNSEL**

Alex D. Gonzalez, Gonzalez & Smith, PC, Chandler, Arizona, for the defendant-appellant, Rafael Rivera-Alonzo.

Karla H. Delord, Assistant United States Attorney for the District of Arizona, Phoenix, Arizona, for the appellee, United States of America.

---

**OPINION**

N.R. SMITH, Circuit Judge:

A district court does not abuse its discretion in refusing to give an instruction on the lesser included offense, where, as here, a rational jury could not have convicted the defendant of the lesser-included offense without finding the element that would convert the lesser offense into the greater offense. Also, given the record in this case, the district court did not commit clear error in finding on sentencing that the defendant's conduct was motivated by the victim's official status. Accordingly, we affirm.

**BACKGROUND AND FACTS**

Border Patrol Agent Alex Mendoza encountered Rafael Rivera-Alonzo ("Rivera") and his cousin (Luis Valdez-Cordero) after they illegally entered the United States near San Luis, Arizona on July 15, 2006. When Agent Mendoza approached the men, he was wearing his Border Patrol uniform and was driving in a marked Border Patrol vehicle. When Rivera and Valdez-Cordero began running, Agent

Mendoza (driving his vehicle) pursued them. As Agent Mendoza drew near, he ordered the men (in both English and Spanish) to stop, but both men kept running.[1]

According to Agent Mendoza, he made two attempts to physically stop Rivera. On the first attempt, the agent drove ahead of Rivera but stumbled while getting out of his truck, allowing Rivera to run past him. On the second attempt, as Agent Mendoza approached, Rivera dove at the agent's legs.

A physical struggle ensued. During the struggle, Agent Mendoza initially subdued Rivera by drawing his gun and ordering him to the ground. But when the agent holstered his gun, Rivera began fighting with the agent and eventually took the agent's gun from him, attempting to pull the slide to chamber a round. As Rivera and Agent Mendoza struggled for control of the gun, a second agent (Jose Oceguera) arrived and helped to subdue Rivera. Agent Oceguera testified that, as he approached Agent Mendoza, Agent Mendoza yelled that Rivera had his gun. Agent Oceguera also testified that he saw Rivera throw a gun to the side.

Rivera admits that he ran from Agent Mendoza in an attempt to keep from being arrested for illegally reentering the United States. However, he asserts that Agent Mendoza tackled *him* and began hitting him with the butt of the agent's gun. He claims that he grabbed Agent Mendoza's wrist only in an attempt to stop the agent from hitting him. He also claims that he never struck the agent or took the agent's gun (although he stated that the gun fell out of the agent's hand when Rivera grabbed the agent's wrist).

Valdez-Cordero stated that he observed the struggle between Rivera and Agent Mendoza and that Agent Mendoza was hitting his cousin with what appeared to be a gun.

---

[1]The record indicates that Rivera looked at Agent Mendoza but kept running.

Valdez-Cordero also stated that, after the incident, Rivera had a bump on his head.

Rivera was indicted by a federal grand jury on one count of felony Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)-(b). After a two-day jury trial, Rivera was convicted as charged and sentenced to 120 months' imprisonment. The final jury instructions included instructions on (1) felony assault on a federal officer using a deadly weapon; (2) the offense of felony assault on a federal officer involving physical contact with the victim; and (3) self-defense. Rivera's request for a jury instruction on the lesser-included, misdemeanor offense of simple assault was denied. This appeal followed.

Rivera appeals his conviction for assaulting a federal officer with a dangerous weapon, in violation of 18 U.S.C. § 111(a) & (b), on the basis that the district court failed to instruct the jury on the lesser included offense of simple assault. Rivera also challenges his 120 month sentence, arguing that the district court erred in enhancing the sentence for conduct motivated by the official status of the victim, under U.S.S.G. § 3A1.2.

## STANDARD OF REVIEW

When reviewing the district court's denial of jury instruction on a lesser-included offense, we employ a two-part analysis. *United States v. Hernandez*, 476 F.3d 791, 797 (9th Cir. 2007). First, we review *de novo* whether the "offense on which instruction is sought is a lesser-included offense of that charged." *Id.* (citing *United States v. Fejes*, 232 F.3d 696, 703 (9th Cir. 2000); *United States v. Arnt*, 474 F.3d 1159, 1163 (9th Cir. 2007)). Second, if the requested instruction pertains to a lesser-included offense, we review the denial of the instruction for abuse of discretion. *Id.* at 798.

## DISCUSSION

### I.  The District Court Did Not Abuse its Discretion in Refusing to Instruct the Jury on Simple Assault.

Rivera primarily contends that the district court erred in denying his request for an instruction on simple assault, arguing that simple assault is a lesser-included offense of felony assault on a federal officer under 18 U.S.C. § 111. We agree that simple assault is a lesser-included offense of the offenses for which Rivera was charged, but we conclude that the district court did not abuse its discretion in refusing to give the instruction in this case.

[1] An instruction on a lesser-included offense is warranted if "1) the elements of the lesser offense are a subset of the elements of the charged offense, and 2) the evidence would permit a jury rationally to find [Rivera] guilty of the lesser offense and acquit [him] of the greater." *Arnt*, 474 F.3d at 1163 (internal citations and quotation marks omitted) (quoting *Schmuck v. United States*, 489 U.S. 705, 716 (1989); *Keeble v. United States*, 412 U.S. 205, 208 (1973)). Thus, a district court does not abuse its discretion in refusing to give a lesser-included offense instruction if the jury could not have convicted the defendant of the lesser-included offense without finding the element(s) that would convert the lesser offense to the greater. *See United States v. Torres-Flores*, 502 F.3d 885, 888 (9th Cir. 2007).

### A.  Simple Assault is a Lesser-Included Offense of 18 U.S.C. § 111.

We agree that simple assault is a lesser-included offense of felony assault on a federal officer under 18 U.S.C. § 111. At the time of Rivera's offense, § 111 provided, in relevant part:

> (a) . . . Whoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [a

federal officer] while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111 (effective through January 6, 2008).

We previously held that § 111 defines three separate offenses: "(1) assaults that do not involve physical contact (punishable up to one year), (2) assaults that do involve physical contact[2] (punishable up to eight years), and (3) assaults that involve a deadly or dangerous weapon or bodily injury (punishable by up to twenty years)." *United States v. Chapman*, 528 F.3d 1215, 1219 (9th Cir. 2008) (applying 18 U.S.C. § 111 (effective through Jan. 6, 2008)).

**[2]** The lesser offense at issue in this case is the misdemea-

---

[2]Prior to the Court Security Improvement Act of 2007, effective January 7, 2008, § 111 described the 8-year felony as applying in "all other cases" not constituting simple assault, which were construed to mean assault involving physical contact. *See Chapman*, 528 F.3d at 1219. Congress amended § 111(a) to clarify that the 8-year felony applied "if the assault involved physical contact with the victim of that assault . . . ." *See* Pub. L. No. 110-177, § 208(b), 121 Stat. 2534, 2538 (2008). The district court properly applied the prior version of § 111(a) in effect at the time of Rivera's arrest, although the result would be the same under either version of the statute.

nor violation of § 111(a), which applies only in cases "where the acts in violation of [§ 111(a) ] constitute . . . simple assault." *Chapman*, 528 F.3d at 1222 (alterations in original). Because the statute does not define the term, "simple assault," the term is given its common-law meaning. *See United States v. Turley*, 352 U.S. 407, 411 (1957) ("[W]here a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning."). Under the common law, "[s]imple assault 'is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.' " *United States v. Johnson*, 637 F.2d 1224, 1242 n.26 (9th Cir. 1980) (citations omitted), *abrogated on other grounds by Schmuck v. United States*, 489 U.S. 705 (1989). *See also Chapman*, 528 F.3d at 1219-20. The misdemeanor "simple assault" offense at issue here contains all of the elements of the distinct felony assault offenses under § 111, minus the "physical contact" element of the 8-year felony, and minus the "use[ ] of a deadly or dangerous weapon . . . or . . . bodily injury" element of the 20-year enhanced felony. *See* 18 U.S.C. § 111; *Chapman*, 528 F.3d at 1219. Therefore, simple assault is a lesser-included offense of both the 8-year and the 20-year felonies described in § 111.

## B. Rivera Was Not Entitled to an Instruction on Simple Assault.

[3] Although we conclude that simple assault is a lesser-included offense of felony assault on an officer under § 111, we do not agree that Rivera was entitled to the lesser-included offense instruction under the circumstances of this case. "[T]o warrant a lesser[-]included offense instruction the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Hernandez*, 476 F.3d at 798 (internal quotation marks omitted) (citing *Schmuck v. United States*, 489 U.S. 705, 716

n.8 (1989); *Keeble v. United States*, 412 U.S. 205, 208 (1973)).**³** "[A] district court may not weigh the evidence in determining whether to give a lesser included offense instruction." *Hernandez*, 476 F.3d at 800 (citing *Keeble*, 412 U.S. at 208). However, a district court may properly refuse to give an instruction on a lesser included offense if the jury could not have convicted a defendant of the lesser-included offense without finding the element(s) that would convert the lesser offense to the greater. *See Torres-Flores*, 502 F.3d at 888. Such is the case here.

[4] In this circuit, we adhere to the common law understanding of simple assault as "assault that [does] not involve physical contact." *Chapman*, 528 F.3d at 1219 (citing *United States v. Chestaro*, 197 F.3d 600, 605-06 (2d Cir. 1999)). *See also United States v. McCulligan*, 256 F.3d 97, 104 (3d Cir. 2001) ("[P]roof of actual contact is required to sustain a conviction for any crime beyond simple assault."). Therefore, "an assault, coupled with the presence of physical contact or a similar aggravating factor, such as the intent to commit murder or a serious felony, is not simple." *Chapman*, 528 F.3d at 1219 (citing *United States v. Hathaway*, 318 F.3d 1001, 1009

---

**³**The right to an instruction on a lesser-included offense derives from the common law and the Federal Rules of Criminal Procedure. *Keeble*, 412 U.S. at 208; Fed. R. Crim. P. 31(c). There is a constitutional due process right to a lesser-included instruction in capital cases when the facts would allow the jury to impose a life sentence rather than death. *See Beck v. Alabama*, 447 U.S. 625, 627 (1980). In the context of a habeas corpus review of a state court conviction, we have stated that there is no clearly established federal constitutional right to lesser included instructions in non-capital cases. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam). On direct review, we have not resolved whether there is a Constitutional right to a lesser-included instruction in noncapital cases. *See United States v. Torres-Flores*, 502 F.3d 885, 888 n.3 (9th Cir. 2007). We need not resolve that issue here, because we conclude that "the evidence at trial [was not] such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Hernandez*, 476 F.3d at 798 (citation omitted).

(10th Cir. 2003); *United States v. Yates*, 304 F.3d 818, 823 (8th Cir. 2002)).

In *United States v. Torres-Flores*, we upheld the district court's refusal to give an instruction on the lesser-included, misdemeanor offense under 8 U.S.C. § 1324(a)(2). *See Torres-Flores*, 502 F.3d at 887. There, the statute of conviction converted a misdemeanor immigration offense to a felony upon a finding of specific intent "to violate immigration laws." *Id.* at 888 (internal citation omitted). The defendant argued that he was entitled to an instruction on the lesser-included offense. *Id.* To determine whether the district court abused its discretion in refusing the lesser-included instruction, we asked whether the jury could have convicted the defendant of the misdemeanor without also finding that his conduct encompassed the element (specific intent) that would convert the crime into a felony. *Id.* at 888. Based on the record in that case, we concluded that a rational jury could not have found that the defendant lacked the requisite intent while also convicting him of the misdemeanor offense. *Id.* at 889. Therefore, we concluded that the district court did not abuse its discretion in denying the lesser-included-offense instruction. *Id*.

**[5]** Here, there was undisputed evidence of physical contact during Rivera's altercation with Agent Mendoza. Rivera admitted that he physically fought with the agent and grabbed the agent's wrist in a struggle over the gun. Given the record, a jury could not have convicted Rivera of simple assault without also finding that there was "physical contact." Physical contact is the element that converts the lesser misdemeanor to the greater 8-year felony assault involving physical contact with the victim. Nor, given this record, could a jury have found the firearm enhancement without also finding physical contact.

**[6]** Rivera contends that any physical contact involved in his struggle with Agent Mendoza is negated because it was in

self-defense to excessive force. Therefore, Rivera argues, the contact or gun use was not the type contemplated by the 8-year felony, and the lesser-included offense instruction was warranted. We disagree. To convict Rivera of simple assault while acquitting him of the 8-year felony, the jury would have been required to find that there was no physical contact with the victim. Because there was incontrovertible evidence of physical contact, the jury could not have discounted that contact unless the jury believed Rivera acted only in self-defense. Yet, if the jury found self-defense, Rivera would have been acquitted of all charges, and the jury could not have convicted him of simple assault. Therefore, we conclude that the district court did not abuse its discretion in refusing to give an instruction on simple assault.[4]

---

[4]This case does not present the same issues we confronted in *Arnt*. There we reviewed the denial of a lesser-included-offense instruction on involuntary manslaughter in a murder case where there was some evidence that the killing was accidental. *Arnt*, 474 F.3d at 1165. We held that the lesser-included-offense instruction was required, because "[t]he jury might have been unwilling to acquit [the] killer of all crimes and, even if the jurors believed the evidence pointing to accidental death, without an involuntary manslaughter instruction, they might have convicted of voluntary manslaughter as a compromise between convicting of murder and acquitting entirely." *Id.* (citing *Keeble*, 412 U.S. at 212-13 ("Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.")).

Unlike *Arnt*, the present case does not involve a killing. Therefore, the constitutional concerns arising from a capital case are not present in this case. *See Beck*, 447 U.S. at 627 (stating that there is a constitutional due process right to a lesser-included instruction in capital cases when the facts would allow the jury to impose a life sentence rather than death). Further, the jury in this case was not forced to choose between convicting Rivera of one offense supported by the record and acquitting him of everything. The district court instructed the jury on felony assault on a federal officer using a deadly weapon and felony assault of a federal officer involving physical contact, which carried a significantly less severe sentence. Thus, the jury was not precluded from reaching a compromise verdict supported by the record by the lack of instruction on a still less serious offense not supported by the record.

## II. The District Court Did Not Clearly Err in Finding that Defendant's Conduct was Motivated by the Victim's Official Status.

In sentencing Rivera, the district court applied the "Official Victim" enhancement under U.S.S.G. § 3A1.2, finding that Rivera knew that Agent Mendoza was a federal officer and that Rivera's assaultive conduct was motivated by Agent Mendoza's official status. Rivera argues that the district court erred in imposing this enhancement, because (he claims) his conduct was not motivated by the fact that the victim was a federal agent, but rather by his desire to evade arrest. We review de novo the district court's interpretation and application of the Federal Sentencing Guidelines. *United States v. Jeter*, 236 F.3d 1032, 1034 (9th Cir. 2001). We review the district court's factual findings in support of a sentencing enhancement for clear error. *See United States v. Ferryman*, 444 F.3d 1183, 1185 (9th Cir. 2006); *United States v. Veerapol*, 312 F.3d 1128, 1131-32 (9th Cir. 2002). Given the record, we conclude that the district court's finding that Rivera's conduct was motivated by Agent Mendoza's official status is not clear error. Therefore, the district court did not err in imposing the "Official Victim" enhancement.

The relevant guideline provides:

(Apply the greatest):

(a) If (1) the victim was (A) a government officer or employee; (B) a former government officer or employee; or (C) a member of the immediate family of a person described in subdivision (A) or (B); and

(2) the offense of conviction was motivated by such status, increase by 3 levels.

(b) If subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two,

Part A (Offenses Against the Person), increase by 6 levels.

(c) If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable—

> (1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom; or

> (2) knowing or having reasonable cause to believe that a person was a prison official, assaulted such official while the defendant (or a person for whose conduct the defendant is otherwise accountable) was in the custody or control of a prison or other correctional facility,

increase by 6 levels.

U.S.S.G. § 3A1.2.

[7] The "Official Victim" enhancement does not require that a defendant harbor any particular ill-will towards federal agents. It is enough that a defendant knows that the victim is a federal officer and then assaults the officer in an attempt to get away or evade capture. *See, e.g., United States v. Hernandez-Sandoval*, 211 F.3d 1115, 1117-18 (9th Cir. 2000); *United States v. Alexander*, 48 F.3d 1477, 1493 (9th Cir. 1995)). The key factors are knowledge of the victim's official status and assaultive conduct motivated by that knowledge.

In *Hernandez-Sandoval*, we upheld an "Official Victim" enhancement under U.S.S.G. § 3A1.2(b) where the defendant

rammed two police officers in their cars while attempting to evade arrest. *Hernandez-Sandoval*, 211 F.3d at 1116-17. In *Alexander*, we also affirmed a sentence that included an "Official Victim" enhancement where the defendant shot at police officers and nearly ran over a motorcycle officer during his attempted getaway. *Alexander*, 48 F.3d at 1493.

Likewise, in *United States v. Sanchez*, we upheld the district court's "Official Victim" enhancement where the defendant drove at a Border Patrol agent, rammed his vehicle, and hit the agent in the chest. 914 F.2d 1355, 1362-63 (9th Cir. 1990). There, the enhancement was based on the district court's finding that (1) the defendant knew that the victim was a Border Patrol agent and (2) that the assault was motivated by that knowledge. *Sanchez*, 914 F.2d at 1363.

[8] In this case, Rivera objected to the "Official Victim" enhancement under U.S.S.G. § 3A1.2. In the hearing that followed, the district court took evidence and heard argument on the objection. Our review of the record shows the following evidence considered by the district court: (1) Rivera testified that he knew he was coming to the United States illegally; (2) Rivera testified that he knew he would go to jail and be deported if caught; (3) Rivera testified that he did not want to get caught by Border Patrol; (4) Agent Mendoza was wearing his Border Patrol uniform and driving a marked Border Patrol vehicle; (5) Rivera testified that he ran faster when he saw the Border Patrol vehicle; (6) when Agent Mendoza told Rivera to stop, Rivera looked at him but kept running; (7) when Agent Mendoza approached Rivera, Rivera dove at Agent Mendoza's legs, causing both men to fall to the ground; and (8) Rivera struggled with Agent Mendoza, grabbed his gun, and attempted to use it by pulling the slide back. Ultimately, the district court found that Rivera knew that Agent Mendoza was a Border Patrol agent engaged in his duties and that Rivera's conduct was motivated by that fact. Given the record, these findings are not clearly erroneous and the district court did not err in applying the "Official Victim" enhancement.

## CONCLUSION

The district court did not abuse its discretion in refusing to give a lesser-included instruction on simple assault, because the jury could not have convicted Rivera of simple assault without finding unjustified physical contact, which would convert the lesser offense into the greater. *See Torres-Flores*, 502 F.3d at 888. The district court also did not commit clear error in finding that Rivera's conduct was motivated by the victim's official status.

**AFFIRMED.**